UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID A. EGLAND, | No. 2:13-CV-00049-LRS |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT,** *INTER ALIA* |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

## JURISDICTION

David A. Egland, Plaintiff, applied for Title II Disability Insurance benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on April 15, 2010. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing and one was held on June 2, 2011, before Administrative Law Judge (ALJ) R.J. Payne. Plaintiff, represented by counsel, testified at this hearing. Richard Hutson, M.D., testified as a Medical Expert (ME). On June 20, 2011, the ALJ issued a decision granting benefits for a closed period beginning on April 15, 2009, and ending on March 2, 2011. The Appeals

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 43 years old. He has a high school education and past relevant work experience as a construction worker. Plaintiff alleges disability since April 15, 2009, and his date last insured for DIB was December 31, 2010.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ: 1) improperly discounted his credibility regarding his subjective pain complaints and claimed physical limitations; 2) arrived at an erroneous determination regarding his residual functional capacity (RFC) after March 1, 2011; 3) improperly relied on the Medical-Vocational Guideline ("grids"); and 4) his decision that Plaintiff was no longer disabled after March 1, 2011 is not supported by substantial evidence in light of the additional evidence presented to the Appeals Council.

## DISCUSSION

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 4**

work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has severe impairments which include status post anterior fusion of the cervical spine from C4 to C7, and a microdiscectomy of the lumbar spine at L4-5; 2) from April 15, 2009 through March 1, 2011, Plaintiff's impairments met or equaled the criteria of Listing 1.04 (Disorders of the Spine) of 20 C.F.R. § 404 Subpart P, App. 1, and therefore, Plaintiff was disabled during that period of time; 3) medical improvement occurred after March 1, 2011, such that Plaintiff's impairments no longer met or equaled the criteria of Listing 1.04; 3) beginning on March 2, 2011, Plaintiff has the residual functional capacity (RFC) to perform sedentary work, although he cannot perform overhead activities, can only occasionally bend, stoop and crouch,

cannot engage in work involving unprotected heights, and must avoid concentrated exposure to temperature extremes, humidity and vibrations; 4) Plaintiff's RFC prevents him from performing his past relevant work; and 5) using Medical-Vocational Rules 201.27-29 as a framework for decision-making, and because Plaintiff's non-exertional limitations have little or no effect on the overall occupational base of unskilled sedentary work[1], the Plaintiff's RFC allows him to perform other jobs that exist in significant numbers in the national economy. Accordingly, the ALJ concluded the Plaintiff was no longer disabled beginning on March 2, 2011.

**CREDIBILITY/RFC**

An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. It involves sitting, although a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §404.1567(a) and §416.967(a)).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the] symptoms [from his medically determinable impairments] are not credible beginning on March 1, 2011, to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Tr. at p. 32). The ALJ offered "clear and convincing" reasons for this finding, supported by substantial evidence in the record, as discussed below.

Plaintiff had cervical spine surgery in May 2010 and lumbar spine surgery in November 2010. Both of these surgeries were performed by Cynthia Hahn, M.D., a neurosurgeon. According to Dr. Hahn's October 27, 2010 report, the Plaintiff indicated he had done "very well" following the neck surgery. Although he reported some "residual numbness in the right arm" and that "he drops things sometimes in the right hand," he also reported "not having electric shocks down his arms anymore or the neck pain." He noted "some degree of spasticity in his left arm and sometimes in his legs which has been his baseline from his spinal cord injury in the past." (Tr. at p. 280). Plaintiff was now concerned with lower back and leg pain. He reported "[h]e has been active bicycling," but that walking bothered him "with the jarring." He had also been doing physical therapy which helped his back "somewhat," but was "not necessarily fixing the leg problems." (*Id*.). Dr. Hahn noted that Plaintiff had "a large L4-5 herniated disk and spinal stenosis as well as spondylosis disease." (*Id*.). After consultation with the Plaintiff, it was agreed the Plaintiff should have lumbar spine surgery, specifically "a left L4-5 microdiscectomy and right L5 S1 microdiscectomy foraminotomy."

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7**

(Tr. at p. 282). The surgery was performed on November 29, 2010.

Plaintiff returned to see Dr. Hahn on January 25, 2011. According to her post-operative note from that date: "He is walking quite well. He states the shooting pain down the leg is completely gone. He still has some achy pain into the buttock. Overall, he is pleased with the surgery." (Tr. at p. 293). Dr. Hahn discussed with Plaintiff how to gradually increase his activities and that he might require some physical therapy. (*Id*.). "Overall," according to Dr. Hahn, the Plaintiff was "pleased with how he is doing," although he did "have some residual spasticity from his old cervical myelopathy [spinal cord injury]." (*Id*.).

Dr. Hahn saw the Plaintiff again on March 1, 2011. According to her post-operative note from that date:

> [Plaintiff] returns to the office today status post 2-level microdiscectomy. He states that he no longer has the sharp shooting pain down his legs. He is very pleased. He has a little achy pain down the lateral right thigh and calf "like a pulled muscle" but nothing like what he had preoperatively. He is walking with an upright posture and with good strength and symmetry.
>
> . . .
>
> He would like to do some physical therapy. I think it is a good idea to get into a home back exercise program so that he does not end up back in the operating room. This was prescribed for him.
>
> I think at this point, he is fixed and stable. He may return to work. Between his cervical myelopathy and his lumbar disk problems, he will require a sedentary job or very light to sedentary job.

(Tr. at p. 306).

As indicated, the ALJ concluded the Plaintiff was entitled to a closed period of disability commencing on April 15, 2009, the date he last engaged in substantial gainful activity, through March 1, 2011, the date on which Dr. Hahn declared him

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8**

"fixed and stable" and capable of returning to a "very light to sedentary job."

Additional evidence (medical and vocational) was presented to the Appeals Council after the ALJ rendered his decision. This evidence does not undermine the substantial evidence on which the ALJ based his RFC determination. Rather, it is consistent with his RFC determination. In November 2011, Plaintiff saw Robin Gunn, a certified physician's assistant at the Community Health Association of Spokane (CHAS).[2] In conjunction with Plaintiff's application for general assistance benefits from the State of Washington (GAU), PA-C Gunn completed a questionnaire for the Department of Social and Health Services (DSHS), in which she indicated the plaintiff could "sit for most of the day; walking or standing for brief periods;" that he could lift a maximum of five pounds and frequently lift or carry two pounds; that he had postural limitations arising from restrictions on the range of motion related to his back, lateral (flexion) neck, neck (lateral bending) and neck (rotation); and that his participation in training or employment activities was "appropriate at this time." (Tr. at pp. 330-33). A chart note from the same date stated: "[Plaintiff] still has weight restrictions put on him due to the severity of his condition. He is restricted to lift nothing more than 5 lbs. He is not suppose[d] to climb. He will need a job that is flexible to both sitting and

---

[2] As a physician's assistant, Robin Gunn is not a medically acceptable treating source within the meaning of Social Security regulations. 20 C.F.R. §404.1513(a) and 20 C.F.R. §416.913(a). Although his/he opinion cannot be considered a medical opinion, it can still be considered to show the severity of the Plaintiff's impairments and how they affected his ability to work. 20 C.F.R. §404.1513(d) and 20 C.F.R. §416.913(d).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

standing. He is restricted to do sedentary work only." (Tr. at p. 334).

In June 2012, Plaintiff informed PA-C Gunn that he was interested in resuming physical therapy because it had been awhile since he gone to therapy and he believed "he could benefit from this again." (Tr. at p. 387). In July 2012, Plaintiff returned for a refill of his pain medication. PA-C Gunn reported that Plaintiff was getting "adequate relief" from his chronic neck and back pain. (Tr. at p. 393). In August 2012, PA-C Gunn indicated Plaintiff's "cervicalgia,"[3] was "well-controlled" with medication. (Tr. at p. 409). In September 2012, Plaintiff informed PA-C Gunn "that for about the last 8 months when he sneezes or coughs he loses control of his legs and arms and just drops to the ground" and that "[s]ometimes he hits head and gets injured." (Tr. at p. 415). PA-C Gunn noted that Plaintiff had not followed up with his neurosurgeon (Dr. Hahn) in over a year and suggested he do so as his reported symptoms were "concerning." (Tr. at pp. 415 and 417). On October 22, 2012, however, the Plaintiff returned for a refill on his pain medication at which time PA-C Gunn observed: "He has had surgery which helped[,] but he still has daily pain. The medication improves his quality of life by reducing the pain to a bearable stage." (Tr. at p. 420).

Plaintiff points out that he testified to numbness in his fingers and the need to change positions (sitting/standing) with some frequency. (Tr. at pp. 59-61). Plaintiff asserts his testimony is supported by a Vocational Evaluation Report completed in January 2012. (Tr. at pp. 381-84).[4] As the Commissioner points out,

---

[3] "Cervicalgia" is another term for neck pain.

[4] This report was completed after the ALJ made his decision. It was considered by the Appeals Council, however.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 10**

however, that report concluded Plaintiff had a "medium ability" for "Finger Dexterity and Manual Dexterity." (Tr. at p. 381). And although the report opined that Plaintiff "currently is not gainfully employable," (Tr. at p. 383), this was not based on Plaintiff's physical residual functional capacity. Indeed, the report acknowledged that "[h]is residual functional capacities need to be clarified in order to move forward vocationally and/or educationally," and recommended he be "referred for a Physical Capacities Evaluation (PCE) to clarify his residual functional capacities, and provide potential recommendations for future physical therapy and/or work hardening." (*Id*.).

The ALJ's RFC determination was supported by substantial evidence in the record.

**USE OF MEDICAL-VOCATIONAL RULES (GRID RULES)**

At step five, the Commissioner has the burden of establishing there are a significant number of jobs in the national economy the claimant can perform. The Commissioner may meet this burden by taking the testimony of a vocational expert, or by consulting the grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100-1101 (9th Cir. 1999). If a claimant's non-exertional limitations do not "significantly limit the range of work permitted by his exertional limitations," the grid rules may be used as a "framework" for decision-making. See 20 C.F.R. §§ 404.1569a(d), 416.969a(d), 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e)(2); Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *4.

Here, the ALJ used Medical-Vocational Rules 201.27-29 as a framework for deciding Plaintiff is not disabled. Those rules, which incorporate a limitation to sedentary work, dictate that a younger individual age 18-44, with a high school

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 11**

education or more, and an RFC limited to sedentary work, is "Not disabled." "[A] finding that an individual has the ability to do less than a full range of sedentary work," however, "does not necessarily equate with a decision of 'disabled.'" SSR 96-9p, 1996 WL 374185, at p. 2. "If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." *Id*. The grid rules "take administrative notice that there are approximately 200 separate unskilled sedentary occupations, each representing numerous jobs in the national economy." *Id*. at *3. The "inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability" as "[t]here may be a number of occupations [among] the approximately 200 occupations administratively noticed, and jobs that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded." *Id*. at *4[5].

"[I]f it can be determined that the individual has an ability to lift or carry slightly less than 10 pounds, with no other limitations or restrictions in the ability to perform the requirements of sedentary work, the unskilled sedentary occupational base would not be significantly eroded; however, an inability to lift

---

[5]If Plaintiff turns 50 and is thereafter unable to perform a full range of sedentary work in the absence of having transferable skills or education permitting direct entry into skilled sedentary work, it is possible that the Medical-Vocational Rules would support a funding of disability. The court cannot speculate on future events and therefore makes no finding concerning this possible state of affairs.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

or carry more than 1 or 2 pounds would erode the unskilled sedentary occupational base significantly." *Id*. at *6. Therefore, even if full credence is given to PA-C Gunn's opinion that Plaintiff is limited to lifting five pounds, this would not significantly erode the unskilled sedentary occupational base such as to preclude use of the grid rules as a "framework" for decision-making.

Likewise, Plaintiff's postural and environmental limitations found by the ALJ do not significantly limit the range of work permitted by Plaintiff's exertional limitations. SSR 96-9p, 1996 WL 374185, at *6 provides that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Furthermore, "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id*. at p. 7. And, because "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards," a need to avoid these conditions does not "result in significant erosion of the occupational base." *Id*.

Plaintiff's lifting, postural and environmental limitations do not erode the sedentary unskilled occupational base reflected in the grid rules applied by the ALJ. Accordingly, the ALJ did not err in applying them and foregoing testimony from a vocational expert.

//
//
//

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

```
```

## CONCLUSION

Defendant's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this 18th day of February, 2014.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 14**